FILED - GR
October 13, 2009 3:03 PM

TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: _ald____/_____

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **Theodore Savage**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) Hon. | **1:09-cv-944** |
| v. | ) | **Paul L Maloney** |
| | ) | **Chief U.S. District Judge** |
| **Riverwalk Holdings, Ltd.**, | ) | |
| a limited partnership, **Jay Brian** | ) | |
| **Ledford**, an individual, and | ) | |
| **Stellar Recovery, Inc.**, | ) | |
| a Florida corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**Complaint**

**I.    Introduction**

1.    This is an action for damages brought against debt collectors in response to the debt collectors' practices which violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

**II.    Jurisdiction**

2.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

1

## III. Parties

3.  Plaintiff Theodore Savage is a natural person residing in Cass County, Michigan. Mr. Savage is a "consumer" and "person" as the terms are defined and/or used in the FDCPA. Mr. Savage is a "consumer," "debtor" and "person" as the terms are defined and/or used in the MOC.

4.  Defendant Riverwalk Holdings, Ltd. ("RH") is a limited partnership, with a mailing address of P.O. Box 1987, Colleyville, Texas 76034, and a business address of 1132 Glade Road, Colleyville, Texas 76034. The registered agent for RH is Jay Ledford, 1245 South Main Street, Suite 100, Grapevine, Texas 76051. RH is in the business of purchasing delinquent consumer debt at a discount and then hiring debt collectors to attempt collection of the debts. RH uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. RH is a "debt collector" as the term is defined and/or used in the FDCPA. RH is a "collection agency" and a "licensee" as the terms are defined and/or used in the MOC.

5.  Defendant Jay Brian Ledford is an individual, believed to be residing at 5017 Auburndale Avenue, Colleyville, Texas 76034. Mr. Ledford is a licensed accountant. Mr. Ledford is a partner and officer of defendant Riverwalk Holdings, Ltd. Mr. Ledford manages, oversees, controls, monitors and sets policy regarding the day-to-day debt collection activities at RH. Mr. Ledford uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Ledford is a "debt collector" as the term is defined and/or used in the FDCPA. Mr. Ledford is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

6.  Defendant Stellar Recovery, Inc. ("SRI") is a Florida corporation, with offices at 1845 Highway 93 South, Suite 310, Kalispell, Montana 59901. According to the SRI website (www.stellarrecoveryinc.com), SRI is a member of ACA International. The registered agent in Michigan for SRI is Business Filings Incorporated, 30600 Telegraph Road, Suite 2345, Bingham Farms, Michigan 48025. In 2009, SRI filed with the State of Michigan an Application for Certificate of Authority to Transact Business or Conduct Affairs in Michigan, for the specified purpose of operating a "Collection Agency." SRI uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. SRI regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. SRI is a "debt collector" as the term is defined and/or used in the FDCPA. SRI is a "collection agency" and "licensee" as the terms are defined and/or used in MOC.

**IV.   Facts**

7.  Mr. Savage had a credit account (No. 4185862912650134) with Washington Mutual ("WaMu") which he used to purchase goods and/or services for personal, family and/or household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and used in the FDCPA and MOC.

8.  WaMu later claimed that Mr. Savage did not pay the debt in full and that the account went into default.

9.  Mr. Savage disputed the alleged debt. Mr. Savage continues to dispute the alleged debt.

10. Mr. Savage refused to pay the alleged debt. Mr. Savage continues to refuse to pay the alleged debt.

3

11. Apparently, WaMu charged off the disputed debt and then sold it.

12. When WaMu charged off and sold the disputed debt in or about December 2008, WaMu claimed that Mr. Savage owed approximately $2,025.91 on the account.

13. RH is in the business of purchasing delinquent consumer accounts, typically paying no more than five cents on the dollar. RH then hires other entities to collect the accounts.

14. Sometime in or about December 2008 or January 2009, RH purchased a portfolio of delinquent and charged off WaMu accounts.

15. RH claimed to have purchased Mr. Savage's allegedly delinquent WaMu account.

16. In or about February 2009, RH hired a debt collector named National Recovery Group LLC ("NRG") to collect the debt from Mr. Savage.

17. NRG, on behalf of RH, told Mr. Savage that Mr. Savage owed $2,081.66 on the account.

18. NRG, on behalf of RH, in its efforts to collect the debt from Mr. Savage, violated the FDCPA and Michigan law.

19. On March 12, 2009, Mr. Savage filed suit against NRG in the United States District Court for the Western District of Michigan, Case No. 1:09-cv-222.

20. The lawsuit stated that Mr. Savage disputed the debt, refused to pay the debt, and was represented by named counsel with respect to the debt.

21. On March 25, 2009, Mr. Savage by certified mail provided NRG with the complaint in Case No. 1:09-cv-222 which contained written notice that Mr. Savage disputed the debt, refused to pay the debt, and was represented by a specific attorney with respect to the debt.

22. NRG communicated to RH that Mr. Savage disputed the debt, refused to pay the

4

debt, and was represented by a specific attorney with respect to the debt.

23. The FDCPA states that if a consumer notifies a debt collector in writing that the consumer refuses to pay a debt, the debt collector shall not communicate further with the consumer with respect to such debt. 15 U.S.C. § 1692c(c).

24. The FDCPA states that if a debt collector knows the consumer is represented by an attorney with respect to a debt and has knowledge of, or can readily ascertain, the attorney's name and address, the debt collector may not communicate with the consumer in connection with the collection of the debt. 15 U.S.C. § 1692c(a)(2).

25. The FDCPA states that if a consumer within the thirty-day validation period disputes the debt in writing, the collector shall cease collection of the debt unless and until it mails verification of the debt to the consumer. 15 U.S.C. § 1692g(a) and (b).

26. NRG ceased its efforts to collect the debt and returned the account to RH. In August 2009, Mr. Savage and NRG agreed to settle Case No. 1:09-cv-222.

27. RH also was required by the FDCPA to cease communication with Mr. Savage and to cease collection of the debt. RH instead chose to flout the FDCPA and hired another debt collector to collect the debt from Mr. Savage.

28. In or about May 2009, RH hired a debt collector named Comstock Holdings, Inc., doing business as Superlative RM ("SRM"), to collect the disputed debt from Mr. Savage.

29. By letter dated May 12, 2009, SRM wrote Mr. Savage and demanded payment of the debt. The letter stated that SRM was collecting the debt for RH. The letter stated that Mr. Savage owed $2,081.66 on the account.

30. SRM, on behalf of RH, in its efforts to collect the debt from Mr. Savage, violated

the FDCPA and Michigan law.

31. RH, in hiring SRM to collect the debt from Mr. Savage, also violated the FDCPA and Michigan law.

32. On July 1, 2009, Mr. Savage filed suit against SRM **and** RH in the United States District Court for the Western District of Michigan, Case No. 1:09-cv-608.

33. The lawsuit stated that Mr. Savage disputed the debt, refused to pay the debt, and was represented by named counsel with respect to the debt.

34. On July 6, 2009, Mr. Savage by certified mail provided SRM with the complaint in Case No. 1:09-cv-608 which contained written notice that Mr. Savage disputed the debt, refused to pay the debt, and was represented by a specific attorney with respect to the debt.

35. On July 13, 2009, Mr. Savage by certified mail provided the registered agent for RH, Mr. Ledford, with the complaint in Case No. 1:09-cv-608 which contained written notice that Mr. Savage disputed the debt, refused to pay the debt, and was represented by a specific attorney with respect to the debt.

36. SRM ceased its efforts to collect the debt and returned the account to RH.

37. In August 2009, Mr. Savage, SRM and RH agreed to settle Case No. 1:09-cv-608.

38. RH was required by the FDCPA to cease communication with Mr. Savage and to cease collection of the debt. RH instead and again chose to flout the FDCPA and hired yet another debt collector to collect the debt from Mr. Savage.

39. In or about September 2009, RH hired defendant Stellar Recovery, Inc. to collect the disputed debt from Mr. Savage, despite RH having received written notice that Mr. Savage disputed the debt, refused to pay the debt, and was represented by a specific attorney with respect

6

to the debt. RH thereby violated the FDCPA, 15 U.S.C. §§ 1692c(c), 1692c(a)(2) and 1692g(b).

40. On or about September 25, 2009, a SRI employee telephoned Mr. Savage's residential telephone and left the following recorded message on Mr. Savage's voice mail: "Hi. This is a message for Ted Savage. This is Brian with Stellar Recovery. Please call me back. 888-613-0238."

41. On or about October 5, 2009, a SRI employee telephoned Mr. Savage's residential telephone and left the following recorded message on Mr. Savage's voice mail: "Good morning. This message is for Mr. Theodore Savage. This is Mr. Brian who's calling with the corporate offices of Stellar Recovery. Please call me back at 888-613-0238."

42. Each recorded message left by the SRI employee on Mr. Savage's voice mail conveyed information regarding a debt directly or indirectly to Mr. Savage.

43. Each recorded message left by the SRI employee on Mr. Savage's voice mail was a "communication" as the term is defined and/or used in the FDCPA and MOC

44. The SRI employee left a recorded message on Mr. Savage's voice mail that did not disclose in the message that the telephone call was from a debt collector.

45. By failing to disclose in a recorded message left by the SRI employee on Mr. Savage's voice mail that the caller was a debt collector, SRI violated the FDCPA, 15 U.S.C. § 1692e(11), *Foti v. NCO Financial Systems, Inc.,* 424 F.Supp.2d 643 (2006); *Leyse v. Corporate Collection Services, Inc.,* 2006 WL 2708451 (SDNY Sept.18, 2006).

46. In September 2009, it was the practice of SRI in connection with the collection of debts sometimes to leave a recorded message on the consumer's voice mail or telephone answering machine without disclosing in the message that the telephone call was from a debt

7

collector.

47. In September 2009, SRI and its employees when telephoning consumers in connection with the collection of a debt sometimes used a script and left a recorded message on the consumer's voice mail or telephone answering machine which script failed to disclose that the caller was a debt collector.

48. In September 2009, SRI did not require its employees when telephoning consumers in connection with the collection of a debt and leaving a recorded message on the consumer's voice mail or telephone answering machine always to state that the caller was a debt collector.

49. The SRI employee left a recorded message on Mr. Savage's voice mail that concealed the purpose of the communication.

50. The SRI employee left a recorded message on Mr. Savage's voice mail that did not reveal the purpose of the telephone call.

51. The SRI employee left a recorded message on Mr. Savage's voice mail that concealed the purpose of the telephone call.

52. The SRI employee left a recorded message on Mr. Savage's voice mail and concealed or did not reveal the purpose of the communication, which violated the MOC, M.C.L. § 339.915(e).

53. In September 2009, SRI employees when telephoning consumers in connection with the collection of a debt sometimes used a script and left a recorded message on the consumer's voice mail or telephone answering machine which script did not reveal or concealed the purpose of the telephone call. failed to disclose that the caller was a debt collector.

8

54. In September 2009, SRI did not require its employees when telephoning consumers in connection with the collection of a debt and leaving a recorded message on the consumer's voice mail or telephone answering machine always to state the purpose of the telephone call.

55. In September 2009, it was the practice of SRI in connection with the collection of debts to telephone consumers and leave a recorded message on the consumer's voice mail or telephone answering machine which message sometimes concealed or did not reveal the purpose of the telephone call.

56. In the one-year period immediately preceding the filing of this complaint, SRI employees left recorded messages on the voice mail or telephone answering machine of more than one hundred consumers residing within the State of Michigan, which messages failed to disclose that the communication was from a debt collector.

57. In the one-year period immediately preceding the filing of this complaint, SRI employees left recorded messages on the voice mail or telephone answering machine of more than one hundred consumers residing within the State of Michigan, which messages concealed or did not reveal the purpose of the telephone call.

58. On or about October 6, 2009, Mr. Savage's wife, Corina Savage, spoke by telephone with a SRI employee who identified himself as "Brian." The SRI employee demanded payment of the debt. In the ensuing conversation, the SRI employee made the following statements:

    a) SRI was attempting to collect the debt on behalf of defendant RH.

    b) The debt was accruing interest on a daily basis and since being charged off at the

9

end of 2008, the debt had grown from $2081.66 to $2607.27.

 c) He had never encountered anyone like RH before, with accounts accruing interest at such a high rate, and that if not paid immediately, the debt was going to sky rocket.

 d) Mr. Savage would be sued if he did not pay the debt.

Mrs. Savage stated that Mr. Savage disputed the debt. Hearing that, the SRI employee again stated that Mr. Savage would be sued, and that because Mr. Savage wanted to dispute the debt, the SRI employee would recommend to RH that Mr. Savage be sued that day, and that he would make that recommendation immediately.

59. The SRI employee falsely threatened litigation and violated the FDCPA, 15 U.S.C. § 1692e and the MOC.

60. The SRI employee falsely threatened that litigation was imminent and violated the FDCPA, 15 U.S.C. § 1692e and the MOC.

61. SRI and its employees regularly make false threats of litigation in connection with their efforts to collect debts.

62. According to PACER, there are five lawsuits based on the FDCPA and pending against SRI in various United States District Courts: *Appleton v. Stellar Recovery, Inc.*, Case No. 1:09-cv-1440 (Colorado), filed June 19, 2009; *Trocio v. Stellar Recovery, Inc.*, Case No. 1:09-cv-4482 (N.D. Illinois), filed July 24, 2009; *Phipps v. Stellar Recovery, Inc.*, Case No. 3:09-cv-299 (W.D. Ohio), filed August 10, 2009; *Kaiser v. Stellar Recovery, Inc.*, Case No. 1:09-cv-4471(New Jersey), filed August 28, 2009; and *Matthew v. Stellar Recovery, Inc.*, Case No. 4:09-cv-3077 (S.D. Texas), filed September 23, 2009. In *every* complaint filed, the plaintiff/consumer

has alleged that SRI and its employees made false threats of litigation in connection with their efforts to collect a debt.

63. RH has attempted to collect a debt which is falsely inflated and not based on the contractual agreement between WaMu and Mr. Savage.

64. Defendants have falsely represented the character, amount, and legal status of the debt.

65. RH has derivative liability for the acts and omissions of SRI and its employees.

66. The acts and omissions of each defendant were done wilfully.

67. Each defendant and/or its employees wilfully violated the FDCPA and MOC.

68. As an actual and proximate result of the acts and omissions of each defendant and/or its employees, plaintiff has suffered actual damages and injury, including but not limited to, fear, embarrassment, stress, mental anguish, emotional stress, and suffering for which he should be compensated in an amount to be established by jury and at trial.

## V.  Claims for Relief

### Count 1– Fair Debt Collection Practices Act

69. Plaintiff incorporates the foregoing paragraphs by reference.

70. Defendants have violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

   a) Defendants violated 15 U.S.C. § 1692b;

   b) Defendants violated 15 U.S.C. § 1692c;

   c) Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with

the collection of a debt;

d) Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

e) Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

f) Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d) Such further relief as the court deems just and proper.

### Count 2– Michigan Occupational Code

71. Plaintiff incorporates the foregoing paragraphs by reference.

72. Defendants have violated the MOC. Defendants' violations of the MOC include, but are not necessarily limited to, the following:

a) Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b) Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

c) Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or

threatened, and (ii) the legal rights of a creditor or debtor; and

d)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916(2);

b)      Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)      Statutory damages pursuant to M.C.L. § 339.916(2); and

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: October 12, 2009

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com